UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMERICAN INTEGRITY
INSURANCE COMPANY
OF FLORIDA,

       Plaintiff,

v.                          Case No.: 8:24-cv-00783-KKM-AEP

JOHN DOE, owner/user of
the email address
fraud@americanintegrityfraud.com,

       Defendant.

_____/

**PLAINTIFF AMERICAN INTEGRITY INSURANCE COMPANY OF FLORIDA'S MOTION FOR PRELIMINARY INJUNCTION**

      Plaintiff, American Integrity Insurance Company of Florida ("***Plaintiff***"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 65, hereby files this Motion for Preliminary Injunction requesting the Court to enjoin Defendant John Doe ("Defendant"). Specifically, Plaintiff requests this Court to preliminarily enjoin, pending a final resolution of this action, Defendant, its officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, from infringing Plaintiff's trademarks, unfairly competing with Plaintiff in violation of federal and state law, and continuing to operate its business in any manner tending to confuse or deceive the public into believing that its business in any way connected with, sponsored by, or affiliated with Plaintiff.

## I.    INTRODUCTION

This is a civil action for trademark infringement, unfair competition, dilution, and cybersquatting arising under the federal Lanham Act, 15 U.S.C. §§ 1114, 1125(a), 1125(c), and 1125(d), as well as related Florida state law claims for trademark infringement, unfair competition, and defamation, and violation of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes § 501.201 *et seq.* Established in 2006, Plaintiff is the fifth largest Florida-domiciled residential property insurer, with in excess of 300,000 customers and represented by more than 1,000 independent agents. Plaintiff is a Tampa-based company that offers sound and comprehensive property insurance solutions, including traditional home insurance and coverage for vacant homes, condominiums, manufactured homes, rental and seasonal homes, umbrella insurance, golf carts, X-Wind policies, cyber coverage, and watercraft.  Plaintiff further also offers extra protection, including flood insurance as well as identity theft and equipment breakdown coverage, to help address a broad range of needs facing homeowners today.

Plaintiff does business under several trademarks, including AMERICAN INTEGRITY INSURANCE GROUP and INTEGRITY MORE THAN A PROMISE, as well as the following stylized/design marks:







These marks have been registered with the United States Patent and Trademark Office.

Plaintiff has become aware that Defendant has been sending emails from the email address fraud@americanintegrityfraud.com purporting to be Plaintiff, using Plaintiff's federally-registered marks, and making false and defamatory statements regarding Plaintiff and its insurance business. Defendant's actions are causing irreparable injury to Plaintiff, and, unless an injunction is granted, will continue to cause irreparable injury to Plaintiff.

Defendant has attempted to hide his or her identity by registering the domain <americanintegrityfraud.com> and sending these emails anonymously, but Defendant's domain name registrar GoDaddy and domain proxy registrant Domains by Proxy, LLC can identify Defendant. Concurrently with this Motion Plaintiff is filing a Motion to Conduct Early Discovery through which it will presumably be able to identify Defendant and can then provide Defendant notice of this Motion.

## II.    FACTS

### A.    Plaintiff and Its Products

Established in 2006, Plaintiff is the fifth largest Florida-domiciled residential property insurer, with in excess of 300,000 customers and represented by more than 1,000 independent agents.  *See* Declaration ("Decl.") of Michael Sperounes attached hereto as ***Exhibit 1*** at ¶ 3.  Plaintiff is a Tampa-based company that offers sound and comprehensive property insurance solutions, including traditional home insurance and coverage for vacant homes, condominiums, manufactured homes, rental and seasonal homes, umbrella insurance, golf carts, X-Wind policies, cyber coverage, and watercraft.  *Id.* at ¶ 4. Plaintiff also offers extra protection, including flood insurance as well as identity theft and equipment breakdown coverage, to help address a broad range of needs facing homeowners today.  *Id.* at ¶ 5.

### B.    Plaintiff's Trademarks

Plaintiff does business under several trademarks, including AMERICAN INTEGRITY INSURANCE GROUP and INTEGRITY MORE THAN A PROMISE, as well as the following stylized/design marks:





4



(collectively, the "***Marks***"). *Id.* at ¶ 6. The Marks have been registered with the United States Patent and Trademark Office under Registration Nos. 5,264,810, 5,245,920, 5,245,919, 5,264,811, and 5,245,921, true and correct copies of which are attached hereto as ***Exhibits 2-6***. *Id.* at ¶ 7. These registrations are valid and subsisting, have not been cancelled, revoked, or abandoned, and have become incontestable as provided in 15 U.S.C. § 1065. *Id.* at ¶ 8.

Plaintiff owns valuable rights and goodwill in its Marks. *Id.* at ¶ 9. It has spent a great deal of time and money since 2006 building and promoting its business using the Marks resulting in substantial goodwill and consumer recognition. *Id.* As a result of Plaintiff's sales and advertising of its products under the Marks, the widespread sale of such products under the mark, and the quality of the products sold under the mark, such products have come to be, and now are, well and favorably known to the trade and public under the Marks. *Id.* at ¶ 10. Plaintiff has over $509,623,548 in gross written premium sales annually of products under the Marks. *Id.* at ¶ 11. The Marks are a means by which such products are identified as originating with Plaintiff and valuable goodwill in the business as represented by the Marks has been generated. *Id.* at ¶ 12.

## C.    Defendant's Infringement and Wrongful Actions

In March of 2024, Plaintiff became aware of the following email having been received by a number of employees of Plaintiff from the email address fraud@americanintegrityfraud.com:

To view this email information web page, click here.



Finding home insurance, especially for older homes, is nearly impossible these days. And when you can find it, the cost is astronomical. Florida homeowners are literally paying the price to prop up a failing market due to ***Insurance Fraud and litigation***.

We are doing our part, and at American Integrity our moto is ***"If we aren't getting sued, we aren't doing our job".***

At the heart of the issue is ***Insurer Abuse and litigation***. According to the Insurance Information Institute, Florida had 116,000 property insurance claim lawsuits in 2021. California, a state twice as large with almost twice the population as Florida, had 3,500 in 2021. Who ultimately pays the cost for those lawsuits? Florida home insurance customers, resulting in higher profits for all!

Through the use of multiple adjusters, delay awaiting reports, and blocking any meaningful communication, we can get these numbers even higher; and that could mean even higher profits!

**Make Your Voice Heard, Let's Fix Florida Property Insurance!**

Our new **Fraud Portal** takes only a few seconds to view.  Please view it today and

share it with your loved ones and friends here, on social media, and in the Sunshine State – They are paying higher prices, too!

Claims regarding American Integrity **Insurer Fraud** in **all areas** of Florida are also available at our **Claims portal**.

***We're hopeful that beneficial reform will be achieved as a result of our misinformation campaigns.***

***Watch the video "Building Integrity" to learn about legislators in our pockets!***

***Please reach out to your legislator to make your voice heard about this important issue and share our Fraud Portal on Social Media!***

   



**Insurance That Preys On The Disadvantaged, Elderly, and Disabled**
• Homeowners • Integrity? Select • High Valued Home • Condo • Renters •
• Condo • Rental or Vacant • Manufactured Home •
• Umbrella • Golf Cart • Watercraft •
• Flood • Cyber •
This email was sent by: **American Integrity Fraud**

*For detailed information regarding your insurance coverage, including any exclusions, limitations, or terms and conditions that may impact coverage, please review your ambiguously written American Integrity policy or try to speak to your independent agents and adjusters, who might be changed without notice, won't respond and are generally dishonest.. In the event of any conflict, the terms and conditions contained in our ambiguously written policy prevail.*

The information contained herein has been obtained (i.e. cut and pasted) from public on-line internet sources solely for the purposes of satire and humor.  No warranty as to the accuracy, completeness or adequacy of such information is implied.
**Unsubscribe by replying with "unsubscribe" in the reply subject line.**

*Id.* at ¶ 13.

In March of 2024, Plaintiff also became aware of the following email having been received by a number of Plaintiff's independent agents, again from the email address fraud@americanintegrityfraud.com:



## If This Isn't Fraud – Then What Is?
## Did you conspire to commit fraud?

Our thoughts continue to be with Floridians dealing with the devastation caused by Hurricane Ian. Our Catastrophe Response Team continues to work around-the-clock to maximize our profits by deliberately delaying and canceling help to our customers.

**Beware of Fraud and Scams**

Fortunately, **some unscrupulous Insurers, Agents, and Adjusters** will take advantage of our scheme, by delaying our response through the random assignment of multiple representatives, scheduling long-delayed inspections, ignoring other's estimates, requesting previously submitted information, and limiting/blocking any meaningful communication.

**Examples of fraud in your area of Florida are available at our Fraud Portal ; this information is being made available to the general public in attempt to reduce further fraud.**

**If you see fraud, or if you or someone you know has been the victim of a fraud or scam, please report it!** Call Florida's Division of Consumer Services' toll-free helpline at 1-877-MY-FL-CFO (1-877-693-5236).

**Remember to Contact Us FIRST If you see or are aware of fraud.**

**Review claim fraud online through our Fraud Portal; or Claims Portal where you can also check the status of Victim's claims.**

Call the dedicated fraud hot-line number at 800-378-0445 and you could receive a substantial Florida Fraud Fighter reward!

***Unsubscribe by replying with "unsubscribe" in the reply subject line.***
The information contained herein has been obtained (i.e. cut and pasted) from public on-line internet sources solely for the purposes of satire and humor. No warranty as to the accuracy, completeness or adequacy of such information is implied.

*Id.*

The source of these emails is nowhere identified in the emails. *Id*. at ¶ 14. They all originate from the email address fraud@americanintegrityfraud.com. *Id*. Plaintiff is not the owner of the domain <americanintegrityfraud.com> and neither it nor any person or entity sponsored or approved by, or affiliated with, Plaintiff uses the email address fraud@americanintegrityfraud.com. *Id*. at ¶ 15.

The domain <americanintegrityfraud.com> is registered through the domain name registrar GoDaddy, the world's largest domain registrar. *Id*. at ¶ 16. It is registered to a domain proxy registrant named Domains By Proxy, LLC ("**DBP**"), an affiliate of GoDaddy that provides domain privacy services. *See* WHOIS information attached hereto as ***Exhibit 7***. By contracting with DBP, subscribers list DBP as their administrative and technical contacts in the Internet's WHOIS database, thereby delegating responsibility for managing unsolicited contacts from third parties and keeping the domains owner's personal information secret.

The insurance products and services advertised through these emails are not provided by Plaintiff or any person or entity sponsored or approved by, or affiliated with, Plaintiff. *Id*. at ¶ 16. Plaintiff has not licensed or otherwise permitted or approved of the owner and/or user of the email address fraud@americanintegrityfraud.com to use Plaintiff's federally-registered Marks. *Id*. at ¶ 17.

In these emails, Defendant uses Plaintiff's Marks to give the appearance the emails originate with Plaintiff or a source somehow sponsored or approved by, or

affiliated with, Plaintiff.  Defendant further repeatedly uses the pronouns "we" and "our" in an attempt to make the emails appear as if Plaintiff is the author of the emails and as if they provide information on Plaintiff's business, which they do not.

The emails depicted above contain and publish to third parties numerous false and defamatory statements regarding Plaintiff and its business, including, but not limited to:

> If we aren't getting sued – we aren't doing our job.

* * *

Finding home insurance, especially for older homes, is nearly impossible these days. And when you can find it, the cost is astronomical. Florida homeowners are literally paying the price to prop up a failing market due to **Insurance Fraud and litigation.**

<u>We are doing our part</u>, and at American Integrity our moto [sic] is **"If we aren't getting sued, we aren't doing our job".**

* * *

At the heart of the issue is ***Insurer Abuse and litigation***. According to the Insurance Information Institute, Florida had 116,000 property insurance claim lawsuits in 2021. California, a state twice as large with almost twice the population as Florida, had 3,500 in 2021. Who ultimately pays the cost for those lawsuits? Florida home insurance customers, resulting in higher profits for all! Through the use of multiple adjusters, delay awaiting reports, and blocking any meaningful communication, we can get these numbers even higher; and that could mean even higher profits!

* * *

Our new **Fraud Portal** . . .

* * *

. . . our **Claims portal**.

* * *

***We're hopeful that beneficial reform will be achieved as a result of our misinformation campaigns.***

\* \* \*

***Watch the video "[Building Integrity](#)" to [learn about legislators in our pockets](#)!***

\* \* \*

<u>Insurance That Preys On The Disadvantaged, Elderly, and Disabled</u>

\* \* \*

*For detailed information regarding your insurance coverage, including any exclusions, limitations, or terms and conditions that may impact coverage, please review your ambiguously written American Integrity policy or try to speak to your independent agents and adjusters, who might be changed without notice, won't respond and are generally dishonest.. In the event of any conflict, the terms and conditions contained in our ambiguously written policy prevail.*

\* \* \*

**If This Isn't Fraud – The What Is?**
**Did you conspire to commit fraud?**
Our thoughts continue to be with Floridians dealing with the devastation caused by Hurricane Ian. Our Catastrophe Response Team continues to work around-the-clock to maximize our profits by deliberately delaying and canceling help to our customers.

\* \* \*

Fortunately, **[some unscrupulous Insurers, Agents, and Adjusters](#)** will take advantage of our scheme, by delaying our response through the random assignment of multiple representatives, scheduling long-delayed inspections, ignoring other's estimates, requesting previously submitted information, and limiting/blocking any meaningful communication.

\* \* \*

. . . our **[Fraud Portal](#)**.

\* \* \*

. . . our **[Fraud Portal;](#)** or **[Claims Portal](#)** . . .

*Id.* at ¶ 20.

Defendant is aware these statements are false, yet has made and published

such false statements with the intent to injure Plaintiff and its business.  Such false

statements are not privileged and are in fact injuring Plaintiff and its business by damaging Plaintiff's reputation as a reputable insurance company and tarnishing Plaintiff's brand as represented by its wrongfully-used Marks. *Id.* at ¶ 20.

## III.   ARGUMENT

It is well settled that a trademark owner is entitled to injunctive relief to prevent the unauthorized use of any reproduction, counterfeit, copy, or colorable imitation of its mark in connection with the sale, offering for sale, distribution, or advertising of any goods on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive. *See* 15 U.S.C. §§ 1114, 1116, 1125; *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1529 (11th Cir. 1985). To establish entitlement to preliminary injunctive relief, the trademark owner must demonstrate that:

(1)     there is a substantial likelihood it will succeed on the merits;

(2)     it is faced with irreparable injury unless the injunction issues;

(3)     the threatened injury to the plaintiff outweighs whatever damage the proposed injunction may cause the defendant; and

(4)     if issued, the injunction would not be adverse to the public interest.

*Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003).   The facts of this case counsel in favor of the Court entering a preliminary injunction in favor of Plaintiff.

### A.   Plaintiff's Substantial Likelihood of Success on the Merits

Plaintiff brought the following claims: (1) Count I:   Federal Trademark Infringement pursuant to 15 U.S.C. § 1114; (2) Count II: Federal Unfair Competition pursuant to 15 U.S.C. § 1125(a); (3) Count III: Dilution by Tarnishment pursuant to 15 U.S.C. § 1125(c); (4) Count IV: Cybersquatting pursuant to 15 U.S.C. § 1125(d); (4) Count V: Common Law Infringement and Unfair Competition; (5) Count VI: Defamation arising under Florida common law; and (6) Count VII: Deceptive and Unfair Trade Practices pursuant to Florida Statutes § 501.201 *et seq*.  This motion is based primarily on Counts I and II.

Plaintiff's federal trademark infringement claim is brought under 15 U.S.C. § 1114, which provides in pertinent part as follows:

### § 1114.   Remedies; infringement; innocent infringement by printers and publishers

**(1)**   Any person who shall, without the consent of the registrant--

    **(a)**   use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

    **(b)**   reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive;

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

Plaintiff's federal unfair competition claim is brought under 15 U.S.C. § 1125, which provides in pertinent part as follows:

**§ 1125.       False designations of origin, false descriptions, and dilution forbidden**

**(a) Civil action**

**(1)**    Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

**(A)**    is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

**(B)**    in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Pursuant to 15 U.S.C. § 1116(a), which applies to both federal trademark infringement and unfair competition claims, this Court has the power to grant injunctions, according to principles of equity and upon such terms as the Court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the USPTO or to prevent a violation under 15 U.S.C. § 1125(a).

To prevail on either claim, Plaintiff must demonstrate both that (1) it has valid and protectable rights in the Marks senior to those of Defendant; and (2) Defendant's use of the Marks is likely to cause confusion. *Dieter v. B & H Indus. of S.W. Fla., Inc.*, 880 F.2d 322, 326 (11th Cir. 1989), *cert. denied* 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 332 (1990).

### 1. Plaintiff's federally-registered rights in the Marks are valid and protectable.

Plaintiff's Marks are federally-registered, which serves as prima facie evidence of the validity of the marks and of the registration of the marks, of Plaintiff's ownership of the Marks, and of Plaintiff's exclusive right to use the Marks in commerce on or in connection with the goods specified in the registration certificates. 15 U.S.C. §§ 1057(b) & 1115(a). The filing of Plaintiff's applications to register the Marks constituted constructive use of the marks, conferring a right of priority, nationwide in effect, in connection with the goods specified in the registration certificates. 15 U.S.C. § 1057 (c). Plaintiff's common law rights and federally-registered rights in the Marks date back to 2006. So both its common law and federally-registered rights are senior to those of Defendant. In addition to constructive use of the mark, federal registration serves as constructive notice of Plaintiff's claim of ownership to the mark. 15 U.S.C. § 1072.

### 2. Defendant's use of the Marks is likely to cause confusion among the trade and consuming public.

The "central inquiry" for purposes of determining liability in trademark infringement, false designation of origin, and unfair competition actions under

federal and state law, is whether there is a likelihood that the concurrent use of competing marks for the same or closely related goods will likely cause confusion. *Freedom Sav. and Loan Ass'n v. Way*, 757 F.2d 1176, 1179 (11th Cir. 1985), *cert. denied* 474 U.S. 845, 106 S.Ct. 134, 88 L.Ed.2d 110 (1985). In determining whether a likelihood of confusion exists, courts examine several factors, including the following: (1) the type of mark; (2) similarity of the parties' marks; (3) similarity of the parties' goods; (4) similarity of the parties' retail outlets and customers; (5) similarity of advertising media used; (6) the defendant's intent; and (7) actual confusion. *Dieter*, 880 F.2d at 326. Based on an analysis of these seven factors, it is clear that Defendant's use of the Marks is likely to cause confusion among the trade and consuming public.

### a.   <u>Strength of Plaintiff's Marks</u>

In analyzing the type of trademark, a court must determine whether the mark is strong or weak in order to determine the level of protection to be extended to the mark. *Freedom Savings*, 757 F.2d at 1182. In ascending order of strength, there are four categories of distinctiveness in classifying a mark: (1) generic, a mark that suggests the basic nature of the goods or services; (2) descriptive, a mark that identifies a characteristic or quality of a product or service, such as its intended use, ingredients, dimensions, or desirable features; (3) suggestive, a mark that suggests some characteristic of the goods or services to which it is applied, but requires the consumer to use his imagination to determine the nature or the goods or services; and (4) arbitrary or fanciful, a mark that bears no relationship to the goods or services

with which it is associated.  *Popular Bank of Fla. v. Banco Popular de Puerto Rico*, 9 F.Supp.2d 1347, 1356-57 (S.D. Fla. 1998).  Here, the Marks are for the most part arbitrary.  AMERICAN INTEGRITY, INTEGRITY MORE THAN A PROMISE, and the AI Design marks do not describe or suggest anything about the goods marketed and sold under the marks, and as such are entitled to a high level of protection.  *Id.* While one of the Marks contains INSURANCE GROUP within it as part of a larger word, the other elements of the mark are not descriptive.  Moreover, even if consumers had a hint that any of the Marks related to insurance in some way, this would at a minimum make the applicable mark suggestive such that it would still be entitled to a higher level of protection.

### b.   Similarity of the Parties' Marks

Plaintiff and Defendant's marks are identical because Defendant is purposely using Plaintiff's Marks and attempting to appear as though it is Plaintiff or affiliated with Plaintiff.

### c.   Similarity of the Parties' Goods

The greater the similarity between the parties' goods, the greater the likelihood of confusion.  *E. Remy Martin*, 756 F.2d at 1530.  Here again, the parties' goods and services are the same because Defendant is attempting to appear as though it is Plaintiff or affiliated with Plaintiff.

### d. <u>Similar Types of Retail Outlets, Consumers, and Advertising</u>

Defendant is attempting to appear as though it is Plaintiff or affiliated with Plaintiff and has sent out marketing or advertising emails in the same way that Plaintiff would. *See* Decl. ¶ 21. Defendant has further sent such emails at a minimum to Plaintiff's own employees and independent agents.

### e. <u>Defendant's Improper Intent</u>

Plaintiff has been using the Marks for its insurance products since 2006. Defendant is obviously well aware of Plaintiff and its rights in the Marks because Defendant is attempting to portray that it is Plaintiff or affiliated with Plaintiff. In addition, the malicious and defamatory statements made in the emails sent by Defendant showcase its improper intent and express desire to injure Plaintiff and its reputation.

### f. <u>Evidence of Actual Confusion</u>

Actual confusion is not required for a finding of a likelihood of confusion, and in this instance, Defendant's infringing use of the Marks is recent. *FCOA LLC*, 57 F.4th at 956 (stating that actual confusion is not a requirement for finding a likelihood of confusion). Moreover, Defendant is not using a mark confusingly similar to Plaintiff's Marks; instead Defendant is portraying itself as Plaintiff and using Plaintiff's identical Marks. This not only shows the intent to create actual confusion but it undoubtedly will cause actual confusion.

### B.   Irreparable Injury to Plaintiff

A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant has clearly established the "burden of persuasion" as to each of the prerequisites. *Pro Video Instruments, LLC v.Thor Fiber, Inc.*, 2019 WL 497710, \*2 (M.D. Fla. Feb. 8, 2019) (citing *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)).   At the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding." *Id.* (citing *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995)).   In trademark disputes, a sufficiently strong showing of likelihood of confusion may by itself constitute a showing of substantial likelihood of prevailing on the merits and/or a substantial threat of irreparable harm.   *Id.* (citing *E. Remy Martin & Co., S.A. v. Shaw-Ross Intern. Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985)); *see also Commodores Entm't Corp. v. McClary*, 2014 WL 5285980, \*4 (M.D. Fla. Oct. 15, 2014); *Dunkin' Donuts Franchised Restaurants LLC v. D & D Donuts, Inc.*, 566 F.Supp.2d 1350, 1361 (M.D. Fla. 2008).   In this case, there is a very clear and strong showing of likelihood of confusion that warrants a finding that Plaintiff is faced with a substantial threat of irreparable injury if the requested injunction is not issued.   Defendant is maliciously sending out communications in an effort to cause confusion with Plaintiff and harm Plaintiff's reputation.   Given this, Plaintiff has undoubtedly already suffered direct harm to its goodwill and reputation.   *Creeled, Inc. v. Individuals, Partnerships and*

*Unincorp. Assoc. Identified on Schedule A*, 2022 WL 18927025, *3 (M.D. Fla. Dec. 2, 2022) (stating that when a trademark owner shows a likelihood of infringement, it is presumed to likely suffer immediate and irreparable injury if an injunction is not granted); *see also Woodard-CM, LLC v. Sunlord Leisure Products, Inc.*, 2020 WL 5547876, *3 (S.D. Fla. Aug. 17, 2020) (granting preliminary injunction when "plaintiff was unable to control the nature and quality of the defendant's products which would likely affect customer perception as to the Plaintiff's ability to protect its intellectual property"); *see also Scan Design of Florida, Inc. v. Scan Design Furniture, Inc.*, 2001 WL 599146 (S.D. Fla. May 18, 2001) (granting preliminary injunction and explaining example of trade show confusion with vendors believing orders were from the plaintiff when they were from the defendant).  Moreover, this is not a case where Plaintiff has delayed in protecting its rights such that irreparable harm cannot be shown.  To the contrary, Plaintiff discovered the infringement in March 2024, and when it was unable to identify Defendant, it immediately proceeded with filing suit as well as filing this Motion.

### C.   The Threatened Injury to Plaintiff Outweighs Whatever Damage the Proposed Injunction May Cause Defendant.

The threatened injury to Plaintiff far outweighs any harm that Defendant may face if the requested injunction issues.  The injury to Plaintiff is that over 18 years of goodwill associated with the Marks will continue to be eroded when the trade and consuming public are confused by the parties' concurrent use of the Marks over the course of these proceedings.  If Defendant's infringement continues throughout

these proceedings, there is a great risk of the destruction of many years of hard work and effort on the part of Plaintiff in building its products' reputation under the Marks. The harm to Defendant if the injunction issues is simply that it will have to cease sending the malicious emails that it is not entitled to send.

Since Plaintiff's Marks are registered with the USPTO, Defendant was on at least constructive notice of Plaintiff's rights when it began infringing, and it was obviously directly well aware of Plaintiff and Plaintiff's Marks since it constructed and distributed the emails pretending to be Plaintiff.  Defendant should not be heard to complain about hardship when its infringement is being perpetrated with knowledge of Plaintiff's prior rights and a direct intent to injure Plaintiff.  *Brand Ventures, Inc. v. TAC5, LLC*, 2018 WL 691774, *4 (M.D. Fla. Feb. 2, 2018) (stating that a preliminary injunction should not be denied due to negative effects on defendant's business built on infringement); *Herb Reed Enter., LLC v. World Famous Platters Road Shows I LLC*, 2014 WL 12573009, *4 (M.D. Fla. Feb. 7, 2014) (finding in plaintiff's favor in balancing hardships because the defendant had no legitimate interest in the use of the marks and plaintiff did not seek to prevent the defendant from engaging in its business in a noninfringing manner). Any harm that may be suffered by Defendant at this point is occasioned by its own actions.

### D.  The Public Interest Would Be Served by the Requested Injunction.

"[A]n injunction from infringing behavior serves the public interest in protecting consumers from such behavior." *Commodores*, 2014 WL 5285980, *4

(citing *Nike, Inc. v. Leslie*, 227 U.S.P.Q. 574, 575 (1985)).  Also, it is in the public interest to avoid inevitable confusion that may result from trademark infringement. *Id.* (citing *Tally–Ho, Inc. v. Coast Cmt. Coll. Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989)); *see also Sundor Brands, Inc. v. Borden, Inc.*, 653 F.Supp. 86, 93 (M.D.Fla.1986) ("The public interest ... would be served by the entry of an injunction which would immediately prevent further confusion of customers from occurring."). Plaintiff's products are high quality, and its Marks have been in use for over 18 years. As a result, the consuming public knows the brands and has come to expect a certain level of quality when it purchases genuine products of Plaintiff.  The consuming public interest is paramount and its expectations should be protected.  *Sundor Brands*, 653 F.Supp. at 93.  If Defendant's infringement continues, consumers who rely on the Marks when purchasing products are being and will continue to be deceived by the mistaken belief that Defendant is Plaintiff or affiliated with Plaintiff. The public has a right to be free from the confusion likely to result from Defendant's unauthorized use of the Marks.  Granting the requested injunction will serve the public interest by preventing consumer confusion.

### E.   The Court should exercise its discretion to require no bond.

Fed. R. Civ. P. 65 and Local Rule 6.01 require Plaintiff to provide an explanation of the amount and form of required security.  "It is well-established that the amount of security required by Rule 65(c) is a matter within the discretion of the trial court, and the court may elect to require no security at all." *TracFone*

*Wireless, Inc. v. Washington*, 978 F. Supp. 2d 1225, 1235 (M.D. Fla. 2013) (granting preliminary injunction in trademark case and requiring no bond).  Courts frequently exercise discretion to require no bond amount when the plaintiff has shown a high likelihood of success on the merits or when the potential damage to the defendant is minimal.  *Id.*; *see also Brand Ventures, Inc.*, 2018 WL 691774, *6 (waiving bond amount due to high likelihood of success on the merits); *BMW of North America v. Au-toMotive Gold, Inc.*, 1996 WL 1609124, *9 (M.D. Fla. June 19, 1996 (waiving bond amount).  In this instance, Plaintiff has shown a high likelihood of success on the merits given its use of the strong Marks for over 18 years; its incontestable federal registrations; and the fact that Defendant is using the infringing same marks purposely to cause confusion and harm Plaintiff and its reputation.  The Court should exercise its discretion to require no bond.

## IV.    CONCLUSION

This is a clear case of trademark infringement, false designation of origin, and unfair competition, as well as defamation.  Defendant's use of Plaintiff's identical Marks in an effort to come off as Plaintiff is obviously likely to cause confusion among the trade and consuming public.  Indeed Defendant is clearly purposefully trying to create confusion through distribution of the defamatory emails. Plaintiff has demonstrated each element required to establish entitlement to preliminary injunctive relief, and respectfully requests that the Court preliminarily enjoin Defendant from using the Marks during the pendency of this action.[1]

---

[1] Pursuant to Local Rule 6.02, Plaintiff's Proposed Order is attached hereto as ***Exhibit 8***.

Dated:  April 2, 2024

Respectfully submitted,

/s/ J. Todd Timmerman
J. Todd Timmerman
Florida Bar No. 0956058
ttimmerman@shumaker.com
Mindi M. Richter
Florida Bar No. 0044827
mrichter@shumaker.com
Shumaker, Loop & Kendrick, LLP
101 East Kennedy Boulevard
Suite 2800
Tampa, Florida 33602
Telephone No.: (813) 229-7600
Facsimile No.: (813) 229-1660

*Attorneys for Plaintiff, American Integrity Insurance Company of Florida*

## **LOCAL RULE 3.01(g) CERTIFICATE**

I HEREBY CERTIFY that we have not been able to confer on this Motion because we have not yet been able to determine the identity of Defendant.  As a result, we are unable to represent whether Defendant opposes the relief sought herein.

/s/ J. Todd Timmerman
Attorney

24

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 2, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic filing to all counsel of record.  In addition, I certify that this Motion, along with the Complaint, will be served on Defendant by a process server once Defendant is identified.

/s/ J. Todd Timmerman
Attorney