## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**AMERICAN INTEGRITY**
**INSURANCE COMPANY**
**OF FLORIDA,**

       **Plaintiff,**

**v.**                               **Case No.: 8:24-cv-00783-KKM-AEP**

**PATRICK SMITH,**

       **Defendant.**

_____/

### FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
### PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF REQUESTED

Plaintiff, American Integrity Insurance Company of Florida ("***Plaintiff***"), by and through its undersigned counsel, files this Complaint against Defendant, PATRICK SMITH ("***Defendant***"), and states as follows:

### Nature of This Action

1.    This is a civil action for trademark infringement, unfair competition, dilution, and cybersquatting arising under the federal Lanham Act, 15 U.S.C. §§ 1114, 1125(a), 1125(c), and 1125(d), trademark infringement, unfair competition, and defamation arising under Florida state common law, and violation of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes § 501.201 *et seq*.

2.   Established in 2006, Plaintiff is the fifth largest Florida-domiciled residential property insurer, with in excess of 300,000 customers and represented by more than 1,000 independent agents. Plaintiff is a Tampa-based company that offers sound and comprehensive property insurance solutions, including traditional home insurance and coverage for vacant homes, condominiums, manufactured homes, rental and seasonal homes, umbrella insurance, golf carts, X-Wind policies, cyber coverage, and watercraft.   Plaintiff further also offers extra protection, including flood insurance as well as identity theft and equipment breakdown coverage, to help address a broad range of needs facing homeowners today.

3.   Plaintiff does business under several trademarks, including AMERICAN INTEGRITY INSURANCE GROUP and INTEGRITY MORE THAN A PROMISE, as well as the following stylized/design marks:



These marks have been registered with the United States Patent and Trademark Office under Registration Nos. 5,264,810, 5,245,920, 5,245,919, 5,264,811, and 5,245,921.

4.      Plaintiff has become aware that Defendant has been sending emails from the email address fraud@americanintegrityfraud.com purporting to be Plaintiff, using Plaintiff's federally-registered marks, and making false and defamatory statements regarding Plaintiff and its insurance business.  Defendant's actions are causing irreparable injury to Plaintiff, and, unless an injunction is granted, will continue to cause irreparable injury to Plaintiff.

5.      Although Defendant attempted to hide his identity by registering the domain <americanintegrityfraud.com> and sending these emails anonymously, Defendant's domain name registrar GoDaddy and domain proxy registrant Domains By Proxy, LLC ultimately identified Defendant pursuant to subpoenas permitted by this Court.

**Parties**

6.      Plaintiff is a Florida corporation with its principal place of business in Tampa, Florida.

7.      Initially, Plaintiff could only identify Defendant by his email address. Defendant's email address is fraud@americanintegrityfraud.com.   Defendant's name and address were ultimately provided by Defendant's domain name registrar

and/or domain proxy registrant.  Defendant is a Florida resident with an address of 16 Tropicana Drive, Punta Gorda, Florida 33950.

## **Jurisdiction and Venue**

8.     The federal law claims of trademark infringement, unfair competition, dilution, and cybersquatting asserted in this action arise under the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq*.  This Court has original jurisdiction over these claims pursuant to 15 U.S.C. § 1121(a), 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a) in that this Complaint states an action based upon a federal question relating to trademarks.

9.     The state law claims of common law trademark infringement, common law unfair competition, defamation, and violation of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes § 501.201 *et seq*. asserted in this action are so related to the federal law claims asserted in this action that they form part of the same case or controversy under Article III of the United States Constitution.  This Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a).

10.     This Court also has original jurisdiction over the state law claims of common law trademark infringement, common law unfair competition, defamation, and violation of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes § 501.201 *et seq*. asserted in this action pursuant to 28 U.S.C.

4

§ 1338(b) because they are joined with substantial and related claims asserted under the Lanham Act, 15 U.S.C. § 1051 *et seq.*

11.    This Court has personal jurisdiction over Defendant pursuant to Florida Statutes § 48.193(1)(a) in that Defendant is on information and belief (a) a resident of Florida, (b) operating, conducting, engaging in, or carrying on a business or business venture in Florida, (c) committing a tortious act in Florida by sending the complained of email communications from within Florida and/or to recipients in Florida, and/or (d) causing injury to Plaintiff in Florida arising out of the complained of email communications sent from outside Florida to recipients in Florida.

12.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant, having subjected itself to personal jurisdiction in this judicial district, resides in this judicial district (*see* 28 U.S.C. § 1391(c)), and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted in this Complaint occurred or will be occurring in this judicial district.

## **Common Factual Allegations**

13.    Established in 2006, Plaintiff is the fifth largest Florida-domiciled residential property insurer, with in excess of 300,000 customers and represented by more than 1,000 independent agents. Plaintiff is a Tampa-based company that

offers sound and comprehensive property insurance solutions, including traditional home insurance and coverage for vacant homes, condominiums, manufactured homes, rental and seasonal homes, umbrella insurance, golf carts, X-Wind policies, cyber coverage, and watercraft. Plaintiff further also offers extra protection, including flood insurance as well as identity theft and equipment breakdown coverage, to help address a broad range of needs facing homeowners today.

14. Plaintiff does business under several trademarks, including AMERICAN INTEGRITY INSURANCE GROUP and INTEGRITY MORE THAN A PROMISE, as well as the following stylized/design marks:





(collectively, the "*Marks*").

15. The Marks have been registered with the United States Patent and Trademark Office under Registration Nos. 5,264,810, 5,245,920, 5,245,919, 5,264,811, and 5,245,921, true and correct copies of which are attached hereto as

***Exhibits 1-5***.  These registrations are valid and subsisting, have not been cancelled, revoked, or abandoned, and have become incontestable as provided in 15 U.S.C. § 1065.

16.    Plaintiff owns valuable rights and goodwill in its Marks.

17.    Plaintiff has expended a great deal of time and money since 2006 building and promoting its business using the Marks resulting in substantial goodwill and consumer recognition.

18.    As a result of Plaintiff's sales and advertising of its insurance products under the Marks, the widespread sale of such insurance products under the Marks, and the quality of the insurance products sold under the Marks, Plaintiff's insurance products have come to be, and now are, well and favorably known to the trade and public under the Marks.  The Marks are a means by which such insurance products are identified as originating with Plaintiff.

19.    As a result of Plaintiff's sales and advertising of its insurance products under the Marks, the widespread sale of such insurance products under the Marks, and the quality of the insurance products sold under the Marks, valuable goodwill in the business as represented by the Marks has been generated.  The goodwill is symbolized by the Marks, and Plaintiff is the owner of the goodwill and the Marks.

**<u>Defendant's Wrongful Actions</u>**

20.   In March of 2024, Plaintiff became aware of the following email having been received by a number of employees of Plaintiff from the email address fraud@americanintegrityfraud.com:

To view this email information web page, click <u>here.</u>



Finding home insurance, especially for older homes, is nearly impossible these days. And when you can find it, the cost is astronomical. Florida homeowners are literally paying the price to prop up a failing market due to ***Insurance Fraud and litigation***.

<u>We are doing our part</u>, and at American Integrity our moto is ***"If we aren't getting sued, we aren't doing our job"***.

At the heart of the issue is ***Insurer Abuse and litigation***. According to the Insurance Information Institute, Florida had 116,000 property insurance claim lawsuits in 2021. California, a state twice as large with almost twice the population as Florida, had 3,500 in 2021. Who ultimately pays the cost for those lawsuits? Florida home insurance customers, resulting in higher profits for all!

Through the use of multiple adjusters, delay awaiting reports, and blocking any meaningful communication, we can get these numbers even higher; and that could mean even higher profits!

**Make Your Voice Heard, Let's Fix Florida Property Insurance!**

Our new **<u>Fraud Portal</u>** takes only a few seconds to view.  Please view it today and share it with your loved ones and friends here, on social media, and in the Sunshine

State – They are paying higher prices, too!

Claims regarding American Integrity **Insurer Fraud** in <u>all areas</u> of Florida are also available at our <u>Claims portal</u>.

***We're hopeful that beneficial reform will be achieved as a result of our misinformation campaigns.***

***Watch the video "[Building Integrity](#)" to [learn about legislators in our pockets](#)!***

***Please reach out to your legislator to make your voice heard about this important issue and share our [Fraud Portal](#) on Social Media!***

   



<u>Insurance That Preys On The Disadvantaged, Elderly, and Disabled</u>
• Homeowners • Integrity? Select • High Valued Home • Condo • Renters •
• Condo • Rental or Vacant • Manufactured Home •
• Umbrella • Golf Cart • Watercraft •
• Flood • Cyber •
This email was sent by: **American Integrity Fraud**

*For detailed information regarding your insurance coverage, including any exclusions, limitations, or terms and conditions that may impact coverage, please review your ambiguously written American Integrity policy or try to speak to your independent agents and adjusters, who might be changed without notice, won't respond and are generally dishonest.. In the event of any conflict, the terms and conditions contained in our ambiguously written policy prevail.*

The information contained herein has been obtained (i.e. cut and pasted) from public on-line internet sources solely for the purposes of satire and humor.  No warranty as to the accuracy, completeness or adequacy of such information is implied.
**Unsubscribe by replying with "unsubscribe" in the reply subject line.**

21. In March of 2024, Plaintiff also became aware of the following email having been received by a number of Plaintiff independent agents, again from the email address fraud@americanintegrityfraud.com:



**If This Isn't Fraud – Then What Is?**
**Did you conspire to commit fraud?**

Our thoughts continue to be with Floridians dealing with the devastation caused by Hurricane Ian. Our Catastrophe Response Team continues to work around-the-clock to maximize our profits by deliberately delaying and canceling help to our customers.

==Beware of Fraud and Scams==

Fortunately, <u>some unscrupulous Insurers, Agents, and Adjusters</u> will take advantage of our scheme, by delaying our response through the random assignment of multiple representatives, scheduling long-delayed inspections, ignoring other's estimates, requesting previously submitted information, and limiting/blocking any meaningful communication.

**Examples of fraud in <u>your area</u> of Florida are available at our <u>Fraud Portal</u> ; this information is being made available to the general public in attempt to reduce further fraud.**

**If you see fraud, or if you or someone you know has been the victim of a fraud or scam, please report it!** Call Florida's Division of Consumer Services' toll-free helpline at 1-877-MY-FL-CFO (1-877-693-5236).

==Remember to Contact Us FIRST If you see or are aware of fraud.==

**Review claim fraud online through our <u>Fraud Portal;</u> or <u>Claims Portal</u> where you can also check the status of Victim's claims.**

Call the dedicated fraud hot-line number at 800-378-0445 and you could receive a substantial Florida Fraud Fighter reward!

*Unsubscribe by replying with "unsubscribe" in the reply subject line.*
The information contained herein has been obtained (i.e. cut and pasted) from public on-line internet sources solely for the purposes of satire and humor.  No warranty as to the accuracy, completeness or adequacy of such information is implied.

22.     The source of these emails is nowhere identified in the emails.  They all originate from the email address fraud@americanintegrityfraud.com.

23.     Plaintiff is not the owner of the domain <americanintegrityfraud.com> and neither it nor any person or entity sponsored or approved by, or affiliated with, Plaintiff uses the email address fraud@americanintegrityfraud.com.

24.     The domain <americanintegrityfraud.com> is registered through GoDaddy, the world's largest domain registrar.  It is registered to a domain proxy registrant named Domains By Proxy, LLC ("**DBP**"), an affiliate of GoDaddy that provides domain privacy services.  By contracting with DBP, subscribers list DBP as their administrative and technical contacts in the Internet's WHOIS database, thereby delegating responsibility for managing unsolicited contacts from third parties and keeping the domains owner's personal information secret.  *See* WHOIS information attached hereto as ***Exhibit 6***.  Plaintiff's identity was discovered only through subpoenas to GoDaddy and DBP authorized by this Court.

25.     The insurance products and services advertised through these emails are not provided by Plaintiff or any person or entity sponsored or approved by, or affiliated with, Plaintiff.

26.     Plaintiff has not licensed or otherwise permitted or approved of the owner and/or user of the email address fraud@americanintegrityfraud.com to use Plaintiff's federally-registered Marks.

11

27.    In these emails, Defendant uses Plaintiff's Marks to give the appearance the emails originate with Plaintiff or a source somehow sponsored or approved by, or affiliated with, Plaintiff.

28.    Defendant further repeatedly uses the pronouns "we" and "our" in an attempt to make the emails appear as if Plaintiff is the author of the emails and as if the emails provide information on Plaintiff's business, which they do not.

29.    The email depicted in paragraph 20 contains and publishes to third parties numerous false and defamatory statements regarding Plaintiff and its business, including, but not limited to:

> If we aren't getting sued – we aren't doing our job.
>
> * * *
>
> Finding home insurance, especially for older homes, is nearly impossible these days. And when you can find it, the cost is astronomical. Florida homeowners are literally paying the price to prop up a failing market due to **<u>Insurance Fraud and litigation.</u>**
>
> <u>We are doing our part</u>, and at American Integrity our moto [sic] is **<u>"If we aren't getting sued, we aren't doing our job".</u>**
>
> * * *
>
> At the heart of the issue is **_<u>Insurer Abuse and litigation</u>_**. According to the Insurance Information Institute, Florida had 116,000 property insurance claim lawsuits in 2021. California, a state twice as large with almost twice the population as Florida, had 3,500 in 2021. Who ultimately pays the cost for those lawsuits? Florida home insurance customers, resulting in higher profits for all!
>
> Through the use of multiple adjusters, delay awaiting reports, and blocking any meaningful communication, we can get these numbers even higher; and that could mean even higher profits!

\* \* \*

Our new **Fraud Portal** . . .

\* \* \*

. . . our **Claims portal**.

\* \* \*

*We're hopeful that beneficial reform will be achieved as a result of our misinformation campaigns.*

\* \* \*

*Watch the video "Building Integrity" to learn about legislators in our pockets!*

\* \* \*

Insurance That Preys On The Disadvantaged, Elderly, and Disabled

\* \* \*

*For detailed information regarding your insurance coverage, including any exclusions, limitations, or terms and conditions that may impact coverage, please review your ambiguously written American Integrity policy or try to speak to your independent agents and adjusters, who might be changed without notice, won't respond and are generally dishonest.. In the event of any conflict, the terms and conditions contained in our ambiguously written policy prevail.*

30.     The email depicted in paragraph 21 contains and publishes to third parties numerous false and defamatory statements regarding Plaintiff and its business, including, but not limited to:

**If This Isn't Fraud – The What Is?**
**Did you conspire to commit fraud?**

Our thoughts continue to be with Floridians dealing with the devastation caused by Hurricane Ian. Our Catastrophe Response Team continues to work around-the-clock to maximize our profits by deliberately delaying and canceling help to our customers.

13

* * *

Fortunately, <u>**some unscrupulous Insurers, Agents, and Adjusters**</u> will take advantage of our scheme, by delaying our response through the random assignment of multiple representatives, scheduling long-delayed inspections, ignoring other's estimates, requesting previously submitted information, and limiting/blocking any meaningful communication.

* * *

. . . our <u>**Fraud Portal**</u>.

* * *

. . . our <u>**Fraud Portal;**</u> or <u>**Claims Portal**</u> . . .

31.    Defendant is aware the statements identified in paragraphs 29 and 30 are false, yet has made and published such false statements with the intent to injure Plaintiff and its business.  Such false statements are not privileged and are in fact injuring Plaintiff and its business by damaging Plaintiff's reputation as a reputable insurance company and tarnishing Plaintiff's brand as represented by its wrongfully-used Marks.

32.    Defendant continued to send additional, similar emails after the filing of this lawsuit.

33.    By virtue of the foregoing, Defendant is also infringing upon Plaintiff's rights in its Marks and unfairly competing with Plaintiff.  Defendant's use of the Marks is likely to cause confusion, mistake, or deception among the trade and the public.

14

34.     Defendant's intentional and willful defamation, infringement of Plaintiff's trademark rights, unfair competition, dilution, and deceptive and unfair trade practices are causing irreparable injury to Plaintiff, and, unless an injunction is granted, will continue to cause irreparable injury to Plaintiff due to the continued injury that will be caused to Plaintiff's reputation, continued tarnishment of its Marks, and the confusion, mistake, and deception that will be and has been generated among the trade and the public.  Plaintiff has suffered and will continue to suffer damage, the exact amount of damage being unknown to Plaintiff at this time.  The damage to Plaintiff is, and will continue to be, irreparable because, among other reasons, of the continuing nature of the defamation, trademark infringement, unfair competition, dilution, and deceptive an unfair trade practices, which would necessitate a multiplicity of suits for damages if the continuance of the wrongs is not enjoined.

35.     All conditions precedent to the institution and maintenance of this action have occurred or been performed by Plaintiff.

36.     Plaintiff has engaged the law firm of Shumaker, Loop & Kendrick, LLP to represent it and has obligated itself to pay its attorneys a reasonable fee for their services in this action.

## COUNT I

### Federal Trademark Infringement (15 U.S.C. § 1114)

37.     Plaintiff realleges paragraphs 1-36 of this Complaint as if fully restated herein.

38.     This is an action for an injunction arising under 15 U.S.C. §§ 1114 and 1116, and for damages arising under 15 U.S.C. §§ 1114 and 1117.

39.     Defendant has, by virtue of its above-described acts, willfully infringed upon Plaintiff's rights in its federally-registered Marks in violation of 15 U.S.C. § 1114.

40.     Defendant's above-described acts of infringement have been committed, and are continuing to be committed, with the knowledge that its use of Plaintiff's Marks is intended to cause confusion, or to cause mistake, or to deceive.

41.     Defendant's above-described acts of infringement have caused irreparable injury to Plaintiff and will continue to cause irreparable injury to Plaintiff if Defendant is not restrained by this Court from further violating Plaintiff's trademark rights due to the confusion, mistake, or deception that will likely be generated among the trade and the public as a consequence of the above-described acts of infringement.  Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff demands judgment:

(a)     entering a temporary restraining order and an injunction preliminarily during the pendency of this action, and thereafter permanently, enjoining and restraining Defendant, its officers, agents, servants,

16

employees, and attorneys, and all other persons in active concert or participation with them, from infringing Plaintiff's trademark rights in the Marks, and from continuing to operate its business in any manner tending to confuse or deceive the public into believing that its business is in any way connected with, sponsored by, or affiliated with Plaintiff;

(b)   ordering an accounting of and awarding Plaintiff such damages, lost profits, royalties, attorney's fees, costs, and prejudgment interest, as may be shown by the evidence;

(c)   awarding up to three (3) times any actual damages sustained by Plaintiff;

(d)   awarding Plaintiff interest on such profits and damages at the highest rate allowed by law;

(e)   awarding Plaintiff costs of this action;

(f)   awarding Plaintiff its reasonable attorney's fees and expenses; and

(g)   awarding Plaintiff such other and further relief as the Court deems just and proper.

## COUNT II

### Federal Unfair Competition (15 U.S.C. 1125(a))

42.   Plaintiff realleges paragraphs 1-36 of this Complaint as if fully restated herein.

43.   This is an action for an injunction arising under 15 U.S.C. §§ 1125(a) and 1116, and for damages arising under 15 U.S.C. §§ 1125(a) and 1117.

44.   Defendant has, by virtue of its above-described acts, infringed upon Plaintiff's federally registered and common law rights in its Marks, and made false

17

representations about Plaintiff, thereby competing unfairly with Plaintiff in violation of 15 U.S.C. § 1125(a).

45.     Defendant's above-described acts of infringement and unfair competition have been committed, and are continuing to be committed, with the knowledge that Defendant's wrongful use of Plaintiff's Marks and false representations about Plaintiff are intended to cause confusion, or to cause mistake, or to deceive.

46.     Defendant's above-described acts of infringement and unfair competition have caused irreparable injury to Plaintiff and will continue to cause irreparable injury to Plaintiff if Defendant is not restrained by this Court from further violating Plaintiff's trademark rights and competing unfairly with Plaintiff due to the confusion, mistake, or deception that will likely be generated among the trade and the public as a consequence of the above-described acts of infringement and unfair competition.  Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff demands judgment:

(a)     entering a temporary restraining order and an injunction preliminarily during the pendency of this action, and thereafter permanently, enjoining and restraining Defendant, its officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, from infringing Plaintiff's trademark rights and unfairly competing with Plaintiff in any manner whatsoever in connection with the operation of its business, and from continuing to operate its business in any manner tending to confuse or deceive the public into believing that its business is in any way connected with, sponsored by, or affiliated with Plaintiff;

(b)     ordering an accounting of and awarding Plaintiff such damages, lost profits, royalties, attorney's fees, costs, and prejudgment interest, as may be shown by the evidence;

(c)     awarding up to three (3) times any damages sustained by Plaintiff;

(d)     awarding Plaintiff interest on such profits and damages at the highest rate allowed by law;

(e)     awarding Plaintiff costs of this action;

(f)     awarding Plaintiff its reasonable attorney's fees and expenses; and

(g)     awarding Plaintiff such other and further relief as the Court deems just and proper.

## **COUNT III**

### **Dilution by Tarnishment (15 U.S.C. § 1125(c))**

47.     Plaintiff realleges paragraphs 1-36 of this Complaint as if fully restated herein.

48.     This is an action for an injunction arising under 15 U.S.C. §§ 1125(c) and 1116, and for damages arising under 15 U.S.C. §§ 1125(c) and 1117.

49.     Plaintiff's Marks are famous and inherently distinctive, and became famous prior to Defendant's use of the Marks.

50.     Defendant's use of Plaintiff's Marks is likely to result in an association arising from the similarity between the Marks used by Defendant and Plaintiff's Marks that harms the reputation of Plaintiff's Marks by the tarnishing of Plaintiff's Marks that is likely to occur.

19

51.     Defendant's above-described acts of dilution by tarnishment have been committed, and are continuing to be committed, with the knowledge that Defendant's use of Plaintiff's Marks is intended to harm the reputation of Plaintiff's Marks.

52.     Defendant's above-described acts of dilution by tarnishment have caused irreparable injury to Plaintiff and will continue to cause irreparable injury to Plaintiff if Defendant is not restrained by this Court from further using Plaintiff's Marks due to the harm to the reputation of Plaintiff's Marks that will likely occur as a consequence of Defendant's wrongful use of Plaintiff's Marks. Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff demands judgment:

(a)     entering a temporary restraining order and an injunction preliminarily during the pendency of this action, and thereafter permanently, enjoining and restraining Defendant, its officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, from using Plaintiff's Marks;

(b)     ordering an accounting of and awarding Plaintiff such damages, lost profits, royalties, attorney's fees, costs, and prejudgment interest, as may be shown by the evidence;

(c)     awarding up to three (3) times any damages sustained by Plaintiff;

(d)     awarding Plaintiff interest on such profits and damages at the highest rate allowed by law;

(e)     awarding Plaintiff costs of this action;

(f)     awarding Plaintiff its reasonable attorney's fees and expenses; and

(g)     awarding Plaintiff such other and further relief as the Court deems just and proper.

## COUNT IV

## Cybersquatting (15 U.S.C. §1125(d))

53.     Plaintiff realleges paragraphs 1 through 36 of this Complaint as if fully restated herein.

54.     This is an action for an injunction arising under 15 U.S.C. §§ 1125(d) and 1116, and for damages arising under 15 U.S.C. §§ 1125(d) and 1117.

55.     On information and belief, Defendant registered, maintains, owns, and/or controls the domain <americanintegrityfraud.com>, which is confusingly similar to Plaintiff's distinctive AMERICAN INTEGRITY INSURANCE GROUP mark.  Defendant is using such domain with the bad faith intent to profit from Plaintiff's mark.

56.     Defendant uses such domain in connection with advertising and promoting insurance products the same or similar to those Plaintiff offers under its AMERICAN INTEGRITY INSURANCE GROUP mark.

57.     Defendant's unauthorized use of such domain is likely to cause confusion, mistake or deception with regard to the origin of Defendant's insurance products and services and to confuse, mislead, and deceive members of the public into believing that such domain and any website located at such domain are Plaintiff or affiliated with Plaintiff, when they are not.

58.    Defendant uses and continues to use such domain in bad faith despite its knowledge of Plaintiff's rights to the AMERICAN INTEGRITY INSURANCE GROUP mark. Defendant does not have any legitimate interest in or to the AMERICAN INTEGRITY INSURANCE GROUP mark or the domain <americanintegrityfraud.com>.

59.    Defendant's acts constitute cybersquatting in violation of 15 U.S.C. § 1125(d).

60.    Plaintiff has been, and will continue to be, irreparably injured by Defendant's conduct.   Plaintiff cannot be adequately compensated for these injuries by monetary remedies alone, and Plaintiff has no adequate remedy at law for Defendant's violation of its rights.   Plaintiff is therefore entitled to injunctive relief against Defendant as well as any damages proven to have been caused, or any profits of Defendant that has been earned unjustly, by reason of Defendant's acts of cybersquatting.

WHEREFORE, Plaintiff demands judgment including a transfer of the domain <americanintegrityfraud.com> and an award of statutory damages.

## COUNT V
### Common Law Trademark Infringement and Unfair Competition

61.    Plaintiff realleges paragraphs 1-36 of this Complaint as if fully restated herein.

62.    This is an action for trademark infringement and unfair competition arising under Florida common law seeking an injunction and damages.

63.    Plaintiff owns valuable common law rights and goodwill in its Marks as a result of its continuous commercial use of the Marks in Florida and elsewhere.

64.    Defendant has, by virtue of its above-described acts, infringed upon Plaintiff's common law rights in its Marks, and made false representations about Plaintiff, thereby competing unfairly with Plaintiff in violation of Florida law.

65.    Defendant's above-described acts of infringement and unfair competition have been committed, and are continuing to be committed, with the knowledge that Defendant's wrongful use of Plaintiff's Marks and false representations about Plaintiff are intended to cause confusion, or to cause mistake, or to deceive.

66.    Defendant's above-described acts of infringement and unfair competition have caused irreparable injury to Plaintiff and will continue to cause irreparable injury to Plaintiff if Defendant is not restrained by this Court from further violating Plaintiff's trademark rights due to the confusion, mistake, or deception that will likely be generated among the trade and the public as a consequence of the above-described acts of infringement and unfair competition. Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff demands judgment:

(a)     entering a temporary restraining order and an injunction preliminarily during the pendency of this action, and thereafter permanently, enjoining and restraining Defendant, its officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, from infringing Plaintiff's trademark rights and unfairly competing with Plaintiff in any manner whatsoever in connection with the operation of its business, and from continuing to operate its business in any manner tending to confuse or deceive the public into believing that its business is in any way connected with, sponsored by, or affiliated with Plaintiff;

(b)     ordering an accounting of and awarding Plaintiff such damages, lost profits, royalties, costs, and prejudgment interest, as may be shown by the evidence;

(c)     awarding Plaintiff interest on such profits and damages at the highest rate allowed by law;

(d)     awarding Plaintiff costs of this action; and

(e)     awarding Plaintiff such other and further relief as the Court deems just and proper.

## **COUNT VI**

### **Defamation**

67.     Plaintiff realleges paragraphs 1-36 of this Complaint as if fully restated herein.

68.     This is an action for defamation arising under Florida common law seeking an injunction and damages.

69.     Defendant has made and published to third parties false and defamatory statements about Plaintiff and its business, including, but not limited

to, those identified in paragraphs 29 and 30, by sending the emails identified in paragraphs 20 and 21 to third parties, including employees and independent agents of Plaintiff and others yet to be identified.

70.    Such false and defamatory statements have been made by Defendant maliciously and with full knowledge of their falsity and with the intent to injure Plaintiff.

71.    Such false and defamatory statements have injured Plaintiff.

72.    Such false and defamatory statements have caused irreparable injury to Plaintiff and will continue to cause irreparable injury to Plaintiff if Defendant is not restrained by this Court from further publishing such statements.  Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff demands judgment:

(a)    entering a temporary restraining order and an injunction preliminarily during the pendency of this action, and thereafter permanently, enjoining and restraining Defendant, its officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, from further publishing false and defamatory statements about Plaintiff and its business;

(b)    ordering an accounting of and awarding Plaintiff such damages, costs, and prejudgment interest as may be shown by the evidence;

(c)    awarding Plaintiff punitive damages;

(d)    awarding Plaintiff interest on such damages at the highest rate allowed by law;

(e)    awarding Plaintiff costs of this action; and

(f)     awarding Plaintiff such other and further relief as the Court deems just and proper.

**COUNT VII**

**Deceptive and Unfair Trade Practices**
**(<u>Florida</u> <u>Statutes</u> §501.201 *et seq.*)**

73.     Plaintiff realleges paragraphs 1-36 of this Complaint as if fully restated herein.

74.     This is an action for violation of the Florida Deceptive and Unfair Trade Practices Act, <u>Florida</u> <u>Statutes</u> § 501.201 *et seq*., seeking an injunction and damages.

75.     Defendant, by virtue of its above-described acts of infringement, unfair competition, tarnishment, and defamation, has maliciously, knowingly and willfully engaged in unfair methods of competition, unconscionable acts and practices, unfair and deceptive acts and practices, and unfair competition with Plaintiff (collectively "***Defendant's Deceptive and Unfair Trade Practices***") in violation of the Florida Deceptive and Unfair Trade Practices Act, <u>Florida</u> <u>Statutes</u> § 501.201 *et seq*.

76.     Defendant has engaged in its Deceptive and Unfair Trade Practices with the willful and malicious intent to injure Plaintiff.

77.     Defendant's Deceptive and Unfair Trade Practices have injured Plaintiff.

26

78.    Defendant's Deceptive and Unfair Trade Practices have caused irreparable injury to Plaintiff and will continue to cause irreparable injury to Plaintiff if Defendant is not restrained by this Court from further engaging in such Deceptive and Unfair Trade Practices.  Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff demands judgment:

(a)    entering a temporary restraining order and an injunction preliminarily during the pendency of this action, and thereafter permanently, enjoining and restraining Defendant, its officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, from further infringing Plaintiff's trademark rights in the Marks, unfairly competing with Plaintiff in any manner whatsoever in connection with the operation of its business, continuing to operate its business in any manner tending to confuse or deceive the public into believing that its business is in any way connected with, sponsored by, or affiliated with Plaintiff, and publishing false and defamatory statements about Plaintiff and its business;

(b)    ordering an accounting of and awarding Plaintiff such damages, attorney's fees, costs, and prejudgment interest as may be shown by the evidence;

(c)    awarding Plaintiff interest on such damages at the highest rate allowed by law;

(d)    awarding Plaintiff punitive damages;

(e)    awarding Plaintiff costs of this action;

(f)    awarding Plaintiff its reasonable attorney's fees and expenses; and

(g)    awarding Plaintiff such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all matters so triable.

Dated:  May 14, 2024

Respectfully submitted,

/s/ J. Todd Timmerman
J. Todd Timmerman, Lead Counsel
Florida Bar No. 0956058
ttimmerman@shumaker.com
Mindi M. Richter
Florida Bar No. 0044827
mrichter@shumaker.com
Samantha Regala
Florida Bar No. 1032553
sregala@shumaker.com
Shumaker, Loop & Kendrick, LLP
101 East Kennedy Boulevard
Suite 2800
Tampa, Florida 33602
Telephone No.: (813) 229-7600
Facsimile No.: (813) 229-1660

*Counsel for Plaintiff, American Integrity Insurance Company of Florida*